CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED
April 01, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ Robin Bordwine
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **M.B.,** | ) |
| Plaintiff, | ) Case No 1:24cv00040 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| **UNITED STATES OF AMERICA, et al.,** | ) By: Pamela Meade Sargent |
| Defendants. | ) United States Magistrate Judge |
| | ) |

This matter is before the court on Plaintiffs' Motion For Leave To Proceed Under Pseudonym And Incorporated Memorandum Of Points And Authorities, filed October 2, 2024. (Docket Item No. 3) ("Motion"). In his Motion, plaintiff requests to proceed in this litigation through use of the pseudonym M.B. and to list his counsel's address as his address of record. (Motion at 1.) On February 10, 2025, after the defendants had been served, the court ordered the defendants to submit a response to the Motion. (Docket Item No. 27.) The individual defendants responded on February 11, 2025, indicating that they did not oppose the Motion. (Docket Item No. 28.) The Government responded on February 24, 2025, indicating that it did not oppose plaintiff's Motion. (Docket Item No. 32.)

## I.     Background

The plaintiff, M.B., is a 55-year-old man who formerly was incarcerated at United States Penitentiary Lee, ("USP Lee"), from July 2023 to February 2024 before being transferred to United States Penitentiary Hazelton. (Docket Item No. 1, ("Complaint"), at 5.) M.B. alleges that individuals employed by the defendant's Federal Bureau of Prisons, ("BOP"), denied him mental health and medical care and

1

committed medical malpractice when treating him. (Complaint at 22-23.) M.B. sues the United States of America under the Federal Tort Claims Act. (Complaint at 24-26.) Additionally, M.B. sues defendants J.C. Streeval, Kareem Wasim, Psy.D., Jose Capriles-Mercado, Psy.D., Bianca Bullock, Psy.D., Laura Bailey, Psy.D., D.A.P.C. and Timothy York, M.A.T., (collectively, "Individual Defendants"), in their individual capacities for violating M.B.'s right under the Eighth Amendment of the United States Constitution to be free from cruel and unusual punishment. (Complaint at 22-23.)[1]

As alleged by M.B. in the Complaint, M.B. claims an extensive history of mental health problems due to sexual abuse and the death of his father during his early adolescence. (Complaint at 11.) M.B. states that he began using drugs and alcohol when he was 11 years old, leading to his first encounter with the juvenile criminal legal system at 13, when he first received mental health treatment. (Complaint at 11.) M.B. states that, at age 15, while incarcerated in a juvenile detention center, he attempted suicide on five different occasions, resulting in his admission to an inpatient psychiatric facility where he received extensive mental health interventions. (Complaint at 11.) M.B. claims that he entered the Utah Department of Corrections, ("DOC"), in 1995, where he continued to exhibit symptoms of a mental health disorder, including multiple suicide attempts. (Complaint at 11-12.) After being transferred to a mental health ward in the DOC, M.B. claims that he was diagnosed with manic depression and began to receive mental health treatment for the diagnosis. (Complaint at 12.) While incarcerated, M.B. further alleges that, in 2004, he was diagnosed with bipolar disorder, and, in 2007, he was diagnosed with major depressive disorder and antisocial personality disorder, and he was prescribed medications for his conditions. (Complaint at 12.)

---

[1] While the Complaint does not cite it, these claims, if viable, must be pursued under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

M.B. alleges that, in 2009, he began his incarceration within the BOP where he was diagnosed with obsessive-compulsive disorder, major depressive disorder and bipolar disorder, and he received medications and treatment for his diagnoses. (Complaint at 12.) In 2011, M.B. claims that he was sexually assaulted by his cellmate. (Complaint at 13.) M.B. claims that, after the assault, his mental health symptoms increased, and he continued to be treated for his symptoms throughout his incarceration and afterwards while in a county jail and on supervised release. (Complaint at 13.) M.B. claims that he returned to the BOP in 2020, where he continued to receive mental health treatment until his transfer to USP Lee on or about July 12, 2023. (Complaint at 14.) M.B. alleges that he did not receive a proper psychological assessment or evaluation upon his arrival to USP Lee. (Complaint at 15.) Upon his arrival to USP Lee, M.B. alleges that he requested to be placed into protective custody and was placed in a segregation housing unit, where facility staff were required to conduct a review of his status every 30 days. (Complaint at 15.) M.B. claims that his reviews were falsified and that they either did not occur, or incorrectly stated that M.B. denied having ongoing mental health symptoms. (Complaint at 15-16.) M.B. claims that these falsified reviews were used to justify denying him refills of his mental health medications. (Complaint at 15-16.) M.B. claims that, on September 11, 2023, he was sexually assaulted by his cellmate. (Complaint at 16.) M.B. alleges that he submitted multiple written requests to be seen by a physician in Health Services and Psychology Services following the assault, but that he was not seen or evaluated pursuant to his request. (Complaint at 16.) M.B. further alleges, that while he had intermittent contact with Psychological Services at USP Lee, he did not receive adequate treatment for his psychological conditions until he was transferred out of the facility. (Complaint at 17-20.) M.B. claims that, shortly after being transferred from USP Lee, his mental health

medications were reinitiated, and he received continued treatment until he was released from custody on June 7, 2024. (Complaint at 20.)

As stated above, the Individual Defendants do not oppose the Motion. (Docket Item No. 28.) Additionally, defendant United States of America does not oppose the motion. (Docket Item No. 32.)

## II.   Standard of Review

Generally, a complaint must name all parties to the suit. *See* FED. R. CIV. P. 10(a). The naming requirement demonstrates the presumption of judicial openness and its prioritization in American law. *See Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 806-07 (E.D. Va. 2012). However, this principle "operates only as a presumption and not as an absolute, unreviewable license to deny." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). In the Fourth Circuit, there is no affirmative requirement that a plaintiff ask for leave before filing a complaint under pseudonym. *See B.R. v. F.C.S.B.*, 17 F.4th 485, 496 (4th Cir. 2021) (declining to adopt *Nat'l Commodity & Barter Ass'n v. Gibbs*, 866 F.2d 1240, 1245 (10th Cir. 1989)). Instead, when a party seeks to litigate under a pseudonym, the court must "ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014). While the defendants do not oppose plaintiff's Motion, there, nonetheless, remains a "judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted." *James*, 6 F.3d at 238.

The Fourth Circuit has adopted a nonexhaustive five-factor test that considers whether (1) the request for pseudonymity is merely to "avoid … annoyance and criticism" or "is to preserve privacy in a matter of sensitive and highly personal

4

nature[;]" (2) identification poses "a risk of retaliatory physical or mental harm to the requesting party" or "innocent non-parties[;]" (3) the age of the party seeking to use a pseudonym; (4) the action is against a governmental or private party; and (5) the "risk of unfairness to the opposing party" from permitting anonymity. *James*, 6 F.3d at 238; *see Pub. Citizen*, 749 F.3d at 273-74 (applying five-factor test); *Doe v. Sidar*, 93 F.4th 241, 247-48 (4th Cir. 2024) (applying these "five nonexhaustive factors" and reversing district court's grant of motion to remove pseudonym (citation omitted)); *see also Sidar*, 93 F.4th at 250 (Wilkinson, J., concurring) (agreeing with the court's decision "eschew[ing] a categorical approach to case-sensitive questions which cannot be answered categorically"). I will analyze each of these factors in turn.

### III. Analysis

The first *James* factor directs the court to consider the pseudonymous party's need to preserve privacy. *See* 6 F.3d at 238. M.B. asserts that his Complaint and medical records detail his psychological trauma arising from past sexual abuse, including the incident at USP Lee, as well as his suicide attempts, bipolar disorder, antisocial personality disorder, obsessive-compulsive disorder and post-traumatic stress disorder, all of which render his identity highly sensitive. (Motion at 3-4.) "[T]he justification" asserted by the party requesting anonymity must not be "merely to avoid the annoyance and criticism that may attend any litigation" and instead must be "to preserve privacy in a matter of sensitive and highly personal nature." *James*, 6 F.3d at 238. Particularly relevant here, M.B.'s Complaint describes a sexual assault by his cellmate and the defendants' response to the assault. (Complaint at 16-19.) "It is well established in the Fourth Circuit that cases arising from allegations of sexual assault necessarily concern information of a highly sensitive and personal nature for

all parties involved in the alleged assault." *Roe v. Tucker,* 2025 WL 41932, at *4 (E.D. Va. Jan. 7, 2025.); *see also Doe v. Doe*, 85 F.4th 206, 211-12 (4th Cir. 2023). The Fourth Circuit has held that pseudonymity was warranted in a case where "the issues … are not merely sensitive – they involve intimate details of Doe's sexual assault and resulting 'psychological trauma.'" *Sidar*, 93 F.4th at 248. In *Sidar*, the court also noted that the far more restrictive "practice of closing courtrooms to members of the public while a victim of sex crimes testifies … has not been uncommon." 93 F.4th at 248 (quoting *Bell v. Jarvis*, 236 F.3d 149, 167 (4th Cir. 2000)).While M.B. has not sued his alleged assailant, "[i]t is the sensitivity of the nature of the *allegations* that matters when considering anonymity, not the legal vehicle for recovery." *Doe v. Darden Rests., Inc.*, 736 F. Supp. 3d 297, 301 (D. Md. 2024) (emphasis in original).This factor, therefore, supports granting plaintiff's Motion and allowing him to proceed in this case by use of pseudonym.

    The second factor outlined by the Fourth Circuit in *James* requires the court to consider "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties." 6 F.3d at 238. M.B. is no longer incarcerated, so he presumably faces little risk of retaliation from defendants. Indeed, M.B. does not allege that he faces such a risk, and so this factor weighs against granting the Motion.

    The third *James* factor concerns the ages of the persons whose privacy interests are sought to be protected. *See* 6 F.3d at 238. Plaintiff is not a minor and does not possess the "special vulnerability" of a child-plaintiff. *Doe v. Stegall*, 653 F.2d 180, 186 (4th Cir. 1981). Therefore, this factor weighs decidedly against anonymity.

    The fourth *James* factor asks "whether the action is against a governmental or private party." 6 F.3d at 238. Regarding the fourth factor, M.B. argues, "Courts have largely concluded that a defendant's status as a governmental party weighs in favor

of pseudonymity." (Motion at 6.) As M.B. notes, this court has held that "[w]hen a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." *Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016) (alteration in original) (quoting *Yacovelli v. Moeser,* No. 1:02cv596, 2004 WL 114483 *7 (M.D. N.C. May 20, 2004)). This view is generally, but not exclusively, supported in the Fourth Circuit and this district. *Compare Doe v. Settle*, 24 F.4th 932, 939 n.5 (4th Cir. 2022) ("a litigant's identity may not be as important in purely legal or facial challenges…."), *and Doe v. Mast*, 745 F. Supp. 3d 399, 412 (W.D. Va. 2024) ("To be sure, when a litigant only sues a governmental party, courts have generally been more likely to allow a plaintiff leave to proceed under a pseudonym."), *and Doe v. Va. Polytechnic Inst. and State Univ.*, 2020 WL 1287960, at *5 (W.D. Va. Mar. 18, 2020) (finding that the fourth *James* factor weighed against granting anonymity when plaintiff's allegations were against "individual defendants in both their official and individual capacities" and "must be read as also challenging the specific actions" of the defendants), *and Doe v. Kuhn*, 2023 WL 4687209, at *3 (W.D. Va. July 21, 2023) (finding that the fourth factor weighed against plaintiff's request to proceed under pseudonym when "the action is against an individual in his capacity as a state actor, not against a faceless government agency."), *with Pub. Citizen*, 749 F.3d at 274 ("[T]he public interest in the underlying litigation is especially compelling given that Company Doe sued a federal agency."), *and Va. State Conf. NAACP v. Cnty. Sch. Bd. of Shenandoah Cnty.*, 2025 WL 270050, at *3 (W.D. Va. Jan. 22, 2025) ("The fourth *James* factor is neutral as the fact that the defendant here is a governmental entity makes this case an object of potential public interest but also eliminates fairness concerns"), *and Doe v. Pittsylvania County, Va.*, 844 F. Supp. 2d 724, 730 (W.D. Va. 2012.) ("[T]he simple fact that plaintiff sues a governmental entity does not give the court more reason to grant her request for

7

anonymity."). In this action, plaintiff sues the United States of America and six Individual Defendants in their individual capacities. (Complaint at 6-7.) As the Fourth Circuit noted in *Doe*, district courts have overwhelmingly found that the fourth *James* factor was neutral or weighed against allowing anonymity when private parties were included in lawsuits against public universities. *See* 85 F.4th at 215 (collecting cases). "[T]he more private parties (sued in their individual capacities), the more likely the courts were to find that the factor weighed against the plaintiff." *Doe*, 85 F.4th at 215. However, as previously mentioned, the Individual Defendants do not object to M.B.'s use of a pseudonym in this litigation. Therefore, I find that this factor weighs neutrally in his request.

The fifth *James* factor concerns "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *James*, 6 F.3d at 238. In this case, the defendants already are aware of plaintiff's identity, and more critically, have filed a response indicating that they do not oppose plaintiff's Motion. Therefore, I find that this factor weighs in favor of granting plaintiff's request.

Lastly, the court notes that "the right of public access, whether arising under the First Amendment or the common law, 'may be abrogated only in unusual circumstances.'" *Pub. Citizen*, 749 F.3d at 266 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988)). Therefore, "the public's interest in open proceedings must inform a district court's pseudonymity calculus." *Pub. Citizen*, 749 F.3d at 274. If M.B. were to proceed in this case pseudonymously, the public retains its access to the docket and can read the pleadings, opinions and orders and attend hearings. I find that M.B.'s allegations of sexual assault and resulting psychological trauma implicate "privacy or confidentiality concerns of the highest order" that justify the unusual dispensation of permitting him to proceed in this case using a pseudonym. *Sidar*, 93 F.4th at 248. Further, I note that the defendants' lack of opposition to the relief that plaintiff requests supports granting plaintiff's Motion.

## IV.  Conclusion

For the foregoing reasons, I find that the factors set forth in *James,* 6 F.3d at 238, support M.B.'s Motion to proceed under pseudonym and are not outweighed by the public's countervailing interest in knowing his identity, as articulated in *Pub. Citizen*, 749 F.3d at 274.

Additionally, to the extent that M.B. requests the court to list his counsel's address as his address of record, the court is unaware of any authority that would require a represented party to use any address other than that of his counsel.

Accordingly, M.B.'s Motion is **GRANTED**.

An appropriate order will be entered.

**ENTERED**:   April 1, 2025.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE